[No. B234147. Second Dist., Div. Four. Apr. 19, 2012.]

In re ALEXIS S. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
ALEJANDRO S., Defendant and Appellant.

## Counsel

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and Timothy M. O'Crowley, Deputy County Counsel, for Plaintiff and Respondent.

## Opinion

**MANELLA, J.**—Appellant Alejandro S. appeals the dispositional order detaining his two young sons, Alexis and Alejandro, and limiting appellant to monitored visitation with them. Appellant contends that evidence he inappropriately touched the boys' adolescent half sister, E.G., did not support that the

boys were at risk of sexual abuse or otherwise justify the dispositional order. We agree and reverse the dispositional order only.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant and the children's mother (Mother) have been together as a couple since 2000, when E.G. was approximately one year old.[2] Their sons, Alexis and Alejandro, were born in 2001 and 2003. The sexual abuse allegations came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in November 2010 after E.G., then 13, ran away from home.[3] When E.G. was located, she informed police officers and the caseworker that she did not want to go back home because appellant had been touching her inappropriately. E.G. reported that the touching had begun approximately six months earlier and described two specific occasions. On one occasion, when Mother was in the bathroom and E.G. was waiting by the door, appellant hugged E.G. from behind and grabbed her breasts. The younger boys were in their bedroom asleep at the time. On another occasion, appellant touched E.G.'s breasts and bottom and kissed her on the mouth.

Interviewed at the time of the detention, appellant denied touching E.G. inappropriately or kissing her on the mouth. Both Alexis and Alejandro, then nine and seven, denied seeing appellant touch E.G. inappropriately. Both boys denied that appellant or anyone else had ever touched them inappropriately or abused them. Mother reported that E.G. had not informed her of appellant's actions. Mother stated that because she had been abused as a young girl, she made efforts to protect E.G., which included not leaving her home alone with appellant. DCFS agreed to leave the children with Mother as long as appellant moved out of the family home.[4]

---

[1] Appellant appealed both the jurisdictional and dispositional orders, but does not seek reversal of the court's jurisdictional order. He asks only that we reverse the dispositional order removing the boys from his custody and requiring their visits to be monitored. The dispositional order also required appellant to attend individual counseling to address the underlying issues contributing to the molestation of E.G. and to complete a sexual abuse treatment program for perpetrators. Appellant does not seek reversal of those aspects of the order.

[2] Appellant is not E.G.'s father. E.G.'s father, R.G., was in prison and did not seek to participate in the proceedings below. R.G. is not a party to this appeal.

[3] The family had been the subject of multiple prior referrals beginning in 2003. The referrals primarily involved allegations of physical and emotional abuse on the part of Mother. The earlier referrals were investigated and deemed to be unfounded. At the time the underlying jurisdictional petition was filed, DCFS was in the process of investigating the latest referral, which claimed Mother was physically abusing the children and that appellant was physically abusing Mother. Interviewed with respect to that referral, E.G. said that she had run away from home because "she and [Mother] never g[ot] along" and "[Mother] [wa]s always picking on her" and "tr[ying] to hit her."

[4] E.G. told the caseworker that the touching incidents happened outside Mother's presence, and that she had never said anything to Mother about the incidents. The original petition filed

Interviewed a month later for the jurisdictional/dispositional report, E.G. initially recanted, stating that appellant only slapped her bottom to get her to hurry up and accidentally touched her breasts when he hugged her. Confronted with statements from prior interviews, E.G. stated that the inappropriate touching had occurred, and this time claimed it had happened approximately twice per week from May to October 2010. E.G. further reported that appellant touched her when other family members were not around, for example, when Mother was in the shower and the boys were outside playing. Appellant would not stop when she asked him, but would leave her alone if she called her younger brothers into the house.

Appellant continued to deny the allegations. Mother reported that E.G. refused to talk to her about what had happened and had begun acting out. Alexis was uncooperative during this stage of the investigation, giving little new information to the caseworker. Alejandro continued to deny having been sexually abused by anyone or knowing about any sexual abuse occurring in the home.

At the jurisdictional hearing which took place over three days in February and March 2011, appellant continued to deny the abuse, testifying that he hugged E.G. normally and kissed her on the forehead and cheek. E.G. testified that appellant had begun touching or rubbing her bottom or breasts in May or June of 2010, when she was in seventh grade, and that once during that period had kissed her on the mouth. E.G. described an occasion when appellant slapped or touched her bottom while she was lying on the bed where her brothers were sleeping. At around the time the touching incidents began, appellant got her a cell phone. E.G. was surprised because she had not been behaving well or getting good grades in school. The touching occurred when members of the family were not present or were otherwise occupied.[5] To keep appellant from bothering her, E.G. would call her brothers into the room or inside the house.

---

by DCFS alleged that Mother was aware or should have been aware of the touching incidents. Those allegations were later stricken when Mother reached an agreement with DCFS concerning jurisdiction and disposition. Mother is not a party to this appeal.

During the initial interviews, the family reported that appellant had been arrested for domestic violence approximately one year earlier. The original petition contained allegations pertaining to domestic violence. Those allegations were dismissed because appellant had completed a program for perpetrators of domestic violence by the time of the jurisdictional hearing.

[5] E.G. described an occasion when appellant picked her up over his shoulder and put his hand on her bottom to carry her, which may have occurred in the family's presence. She also testified that appellant sometimes pulled her into his lap, ostensibly to help him with the computer or to show her something on the computer. She testified this made her feel uncomfortable, but did not state that any offensive touching occurred on those occasions.

After hearing the evidence, the court found true that "on numerous prior occasion[s]," appellant sexually abused E.G. by fondling her breasts and buttocks and by kissing her on the mouth. The court found that such sexual abuse "endangers the child's physical and emotional health, safety and well-being, creates a detrimental home environment and places the child and the child's siblings [Alexis and Alejandro] at risk of physical and emotional harm, damage, danger, sexual abuse and failure to protect." Based on these factual findings, the court found jurisdiction supported with respect to all three children under Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (d) (sexual abuse).[6] In response to arguments made by appellant's counsel, the court agreed that the impact on the boys of appellant's actions was difficult to determine. The court was, however, "persuaded they are at risk," not necessarily "physically," but "[e]motionally."[7]

The dispositional hearing took place six weeks after the jurisdictional hearing, by which time appellant had completed 12 individual counseling sessions and 37 parenting classes. At the May 2011 dispositional hearing, counsel for DCFS argued that the evidence of appellant's inappropriate touching of E.G. was sufficient to support that Alexis and Alejandro were in danger of sexual abuse, which counsel defined to include accidentally coming upon appellant improperly touching E.G. Counsel for Alexis and Alejandro, joined by appellant's counsel, asked the court to grant appellant joint custody of the boys, essentially allowing appellant to have unmonitored visits with and part-time custody of them, with the understanding that appellant would stay away from Mother's home and E.G. Both the minors' counsel and counsel for appellant argued that there was no clear and convincing evidence

---

[6] Undesignated statutory references are to the Welfare and Institutions Code. The court dismissed an allegation of the petition that jurisdiction was also appropriate under section 300, subdivision (j) (abuse of sibling).

[7] Although the court expressed concern about the risk of emotional injury to the boys, the petition did not allege—and the court did not find—jurisdiction supported by section 300, subdivision (c), which applies where the minor is "suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage . . . as a result of the conduct of the parent or guardian . . . ." Courts have debated whether a child who was not and is not likely to become the direct victim of sexual abuse by a parent, but suffers emotionally due to being exposed to the sexual abuse of a sibling in the home, falls under section 300, subdivision (d). (Compare *In re Maria R.* (2010) 185 Cal.App.4th 48, 65–68 [109 Cal.Rptr.3d 882] (*Maria R.*) [holding that "the phrase 'sexual abuse' for purposes of section 300 . . . does not include in its enumerated offenses the collateral damage to a child that might result from the family's or child's reaction to a sexual assault on the child's sibling" (italics omitted)] with *In re Karen R.* (2001) 95 Cal.App.4th 84, 90 [115 Cal.Rptr.2d 18] (*Karen R.*) [where boy observed sister crying after being raped by father and observed both parents physically abusing her when she told her mother, "juvenile court properly could conclude [the boy] personally had been the victim of child molestation and thus had been sexually abused within the meaning of section 300, subdivision (d)"].) As appellant does not seek reversal of the jurisdictional finding, we need not resolve this issue.

that appellant posed a risk to the boys. The minors' counsel stressed that appellant was no longer living with Mother and E.G., there was a "no contact" order in place prohibiting contact with E.G., and there was no evidence that appellant would return to the family home or violate the no contact order. Mother's counsel stated that Mother believed the boys loved appellant and were very comfortable around him. The court found there was a substantial risk that appellant would "sexually abuse[]" the boys and issued orders detaining the boys from appellant's physical custody and requiring visitation to be monitored. This appeal followed.

## DISCUSSION

Appellant contends the evidence does not support that he posed a risk to his biological sons and seeks reversal of the portion of the dispositional order detaining them from his legal custody and requiring visitation to be monitored. We conclude appellant is entitled to the relief requested.

■ After finding that a child is a person described in section 300 and therefore the proper subject of dependency jurisdiction, the court must determine "the proper disposition to be made of the child." (§ 358.) "A dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of [the circumstances listed in paragraphs (1) to (5)] . . . ." (§ 361, subd. (c).) As the court found at the dispositional hearing that detention from appellant was justified because the boys were at risk of "sexual abuse," section 361, subdivision (c)(4) is applicable. Subdivision (c)(4) permits removal based on clear and convincing evidence that "[t]he minor or a sibling of the minor has been sexually abused, or is deemed to be at substantial risk of being sexually abused, by a parent, guardian, or member of his or her household . . . and there are no reasonable means by which the minor can be protected from further sexual abuse or a substantial risk of sexual abuse without removing the minor from his or her parent or guardian, or the minor does not wish to return to his or her parent or guardian."[8] ■ There is no requirement of proof of actual harm to the child by the parent; the standard is substantial risk or danger of harm. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1656–1658

---

[8] The parties state in their briefs that section 361, subdivision (c)(1) was also applicable. Subdivision (c)(1) permits removal based on clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) To the extent the court's concern was that the boys were at risk of collateral emotional damage from observing appellant inappropriately touching E.G., there is no evidence they did so in the past or, in light of appellant's absence from Mother's home, that they would do so in the future.

[54 Cal.Rptr.2d 722].) On review of the court's dispositional findings, "we employ the substantial evidence test, however bearing in mind the heightened burden of proof." (*Id.* at p. 1654.)

In *In re Rubisela E.* (2000) 85 Cal.App.4th 177 [101 Cal.Rptr.2d 760], Division Two of this district reversed a jurisdictional finding that the four younger brothers of a 13-year-old female victim of sexual abuse were at risk of similar abuse. The father had asked the victim to perform a sexual act and had touched her on multiple occasions, but there was no evidence of any suspicious behavior toward the boys and no evidence of any homosexual actions or tendencies on the part of the father. Based on this record, the court concluded DCFS had failed to meet its burden of proof under section 300, as there had been "no demonstration by [DCFS] that 'there is a substantial risk [to the brothers] that [they] will be abused or neglected, as defined in . . . [the applicable] subdivisions.' " (85 Cal.App.4th at pp. 198–199, quoting *In re Edward C.* (1981) 126 Cal.App.3d 193, 198–199 [178 Cal.Rptr. 694].) Division Three and Division Eight of this district subsequently disagreed, holding that any type of "aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior" and that "where . . . a child has been sexually abused, any younger sibling who is approaching the age at which the child was abused, may be found to be at risk of sexual abuse." (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1347 [51 Cal.Rptr.3d 448] (*P.A.*); accord, *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1414 [107 Cal.Rptr.3d 923] (*Andy G.*); *Karen R. supra*, 95 Cal.App.4th at pp. 90–91.)

More recently, in *Maria R.*, the court disagreed with prior cases "to the extent that they . . . held or implied that the risk that [a male child] face[s] may—in the absence of evidence demonstrating that the perpetrator of the abuse may have an interest in sexually abusing male children—be deemed to be one of 'sexual abuse' within the meaning of subdivision (d)." (*Maria R., supra*, 185 Cal.App.4th at p. 67.) The *Maria R.* court noted that the courts deciding *P.A., Andy G.,* and *Karen R.* had been unable to cite "any scientific authority or empirical evidence to support the conclusion that a person who sexually abuses a female child is likely to sexually abuse a male child." (*Id.* at p. 68.) In the absence of scientific evidence "demonstrating that a perpetrator of sexual abuse of a female child [was] in fact likely to sexually abuse a male child," the court was "not persuaded that the rule of general applicability enunciated in *P.A.*, and repeated by the *Andy G.* court, is grounded in fact" and "decline[d] to adopt the reasoning of *P.A.* and *Andy G.*" (*Ibid.*) Acknowledging that the risk of harm to a younger male child can also be supported by evidence concerning the specific actions of the abuser, the court found no evidence in the record before it that the father "ha[d] an interest in engaging in sexual activity with a male child." (*Ibid.*) Accordingly, the appellate court

rejected the juvenile court's conclusion that the father's sexual abuse of his daughters placed his son at substantial risk of sexual abuse.[9] (185 Cal.App.4th at p. 68.)

*P.A., Andy G.* and *Karen R.* are distinguishable from the instant case. *P.A.* involved the assertion of jurisdiction over the two younger brothers of a nine-year-old girl whose biological father had molested her. The court expressly noted that it was the "father's presence in the home [that] placed his sons at risk of sexual abuse." (*P.A., supra,* 144 Cal.App.4th at p. 1347.) In *Andy G.,* the father was found to have molested his adolescent stepdaughters and to have exposed himself while his son was in the same room, thus directly victimizing the boy. (*Andy G., supra,* 183 Cal.App.4th at pp. 1414–1415.) *Karen R.* involved a father who forcibly raped his biological daughter, and physically abused her in the presence of her brother when she complained. (*Karen R., supra,* 95 Cal.App.4th at p. 90.)

Here, it appears from the record that the court's primary concern was emotional injury to the boys from being in a home where sexual abuse was occurring. However, there was no evidence that the boys were in any way aware of appellant's actions. The touching incidents took place outside their presence or when they were asleep. Moreover, as the minors' counsel pointed out, by the time of the dispositional hearing any such risk had been eliminated, as appellant had moved out of the family home and was in compliance with an order prohibiting further contact with E.G. Further, appellant's conduct toward his adolescent stepdaughter—kissing and fondling her—did not support, under a clear and convincing evidence standard, that the boys—ages 10 and eight at the time of the dispositional hearing—were at risk of similar abuse, either now or in the immediate future. There was no evidence of any proclivity on appellant's part to abuse or molest sexually immature children or males of any age, or to expose them to inappropriate sexual behavior.

■ Absent evidence that appellant posed a serious risk of harm to his sons, his past behavior with E.G., which cannot recur as long as he maintains a separate residence and complies with the court order to stay away from her, does not justify detaining his sons from him and restricting him to monitored visitation with them. Under the heightened standard of review applicable to dispositional orders, we conclude the portion of the dispositional order

---

[9] *Maria R.* was cited in *In re B.T.* (2011) 193 Cal.App.4th 685, 694 [122 Cal.Rptr.3d 651], where the appellate court reversed the juvenile court's finding that an infant girl was at risk of sexual abuse based on her mother's affair with a 15-year-old boy: "[The agency's] position assumes an adult woman who has had a consensual sexual relationship with an unrelated 15-year-old boy will probably sexually abuse her infant daughter. This is, of course, a complete non sequitur, so it is not surprising that the record contains no evidence to support this assumption." (Fn. omitted.)

removing Alexis and Alejandro from appellant's legal custody and restricting him to monitored visitation was not supported by the evidence.

## DISPOSITION

The dispositional order is reversed to the extent it removes Alexis and Alejandro from appellant's legal custody and requires that visits be monitored. In all other respects, the jurisdictional and dispositional orders are affirmed.

Epstein, P. J., and Suzukawa, J., concurred.