[No. B239238. Second Dist., Div. Three. Feb. 14, 2013.]

In re RICKY T., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
JUAN T., Defendant and Appellant.

**COUNSEL**

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Juan T., maternal grandfather and one of three legal guardians to three-year-old Ricky T., appeals jurisdictional findings and dispositional orders made with respect to Ricky T. Juan T. contends his sexual abuse of his stepgranddaughters, A.G. and D.G., then ages 12 and nine years, is insufficient to show Ricky T. was at risk of harm in his care.

We conclude Juan T.'s conviction of crimes involving sexual abuse of A.G. gave rise to a presumption Ricky T. was at risk of harm in Juan T.'s care and Juan T. failed to rebut the presumption. (Welf. & Inst. Code, § 355.1, subd. (d).)[1] Also, given that Juan T. boldly abused A.G. while he was working as a vendor in a mall, the juvenile court reasonably could conclude Juan T. might sexually abuse a child in Ricky T.'s presence, thereby rendering Ricky T. a victim of sexual abuse within the meaning of section 300, subdivision (d). Finally, we agree with the cases cited by the juvenile court which hold sexual abuse of a child by a parent places the victim's male and female siblings who remain in the home at risk of similar aberrant sexual behavior. (*In re Karen R.* (2001) 95 Cal.App.4th 84, 90–91 [115 Cal.Rptr.2d 18]; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1347 [51 Cal.Rptr.3d 448]; accord, *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1414 [107 Cal.Rptr.3d 923].) We therefore affirm the orders under review.

## FACTS AND PROCEDURAL BACKGROUND

The family at issue consists of appellant Juan T., his wife Linda T., their four adult children, Arturo, Christina, S., and Erick, and the children's respective families. All except Arturo and his family reside in the Juan and Linda T. residence. Arturo resides with a woman and her four children, two of whom are A.G. and D.G., now 13 and 11 years of age, respectively. A.G. and D.G. have known Juan T. and Linda T. since the children were four and two years of age. S. is the mother of Ricky T. S. is mentally delayed and Ricky T. is autistic and a regional center client. Pursuant to a May 2009 order of the probate court, Juan T., Linda T. and maternal aunt Christina are the legal guardians of Ricky T.

In September of 2011, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging that on August 22, 2011, a sheriff's deputy went to a shopping mall where Juan T. worked as a vendor in response to a report of sexual crimes against children. A security guard at the mall, Reyes Castaneda, told the deputy that 12-year-old A.G. had informed him that her stepgrandfather, Juan T., had been

---

[1] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

touching "her breasts under her shirt and also has touched her on her private area." As Castaneda spoke to the child, Juan T. attempted to leave the mall. Castaneda detained him and contacted law enforcement.

A.G. told the deputy that, commencing in January of 2011, her grandfather repeatedly touched her breasts and vagina and attempted to kiss her with his tongue. When she pushed him away and said she was his granddaughter, he replied he loved her "too much" and told her not to disclose the abuse. A.G. stated Juan T. touched her inappropriately at his home and at the mall. She also stated Juan T. had been molesting her sister, D.G.

Castaneda informed the social worker that Juan T. took A.G. to the mall on two successive days. Several vendors noticed Juan T. sitting in his booth with A.G. on his lap or between his legs, and that Juan T. was touching the child's breasts and vagina. Juan T. placed a blanket over himself and A.G. while inside the booth to try to conceal the molestation. On August 22, 2011, Castaneda saw Juan T. grab the child's buttocks. When Castaneda inquired, A.G. began to cry and reported the abuse.

Castaneda told Juan T. people had seen him touching his granddaughter's breasts and crotch. Juan T. said he was sorry and admitted he should not have touched the child. Juan T. stated, " 'I should have not done it, now I am in trouble.' "

At A.G.'s request, Castaneda called Linda T. to drive A.G. home. However, upon arriving at the mall, Linda T. called A.G. a liar. Castaneda therefore had A.G. wait in his office for deputies to arrive.

In interviews conducted on September 13, 2011, Linda T. denied that Juan T. had done anything of a sexual nature to A.G., claiming he was impotent. Linda T. stated A.G. and D.G. were liars but agreed to have Juan T. move from the home. Juan T. moved to his trailer in Palmdale. Ricky T. remained with Linda T.

Maternal aunt Christina lived in the T. residence with her husband and three children. Christina did not believe A.G.'s allegations and claimed A.G. accused Juan T. because he would not allow her to hang around boys at the mall. Christina stated Juan T. purchased a home for her brother Arturo, who is A.G.'s stepfather. Christina's daughter, age 12 years, claimed A.G. lies and is crazy about boys.

A.G. stated Juan T. started fondling her at the start of 2011. The incidents occurred approximately five times and lasted two and three minutes each time. When they were in the vendor's booth on the day Juan T. was arrested,

he placed a blanket in front of the booth to conceal them. When Juan T. began moving his hand toward her vagina, she pushed him away and yelled. A.G. said Juan T. gave her money, between $5 and $20, to keep quiet.

D.G. stated she had a good relationship with Juan T., her stepgrandfather, until he began to molest her about a year ago when she was nine years old. He would attempt to rub her breasts or her crotch when hugging her from behind but she would push his hands away. D.G. said this occurred about 20 times. D.G. cried and stated: "I don't understand why he did this to me and my sister."

A sheriff's supplemental report indicated a female vendor at the mall reported seeing Juan T. with his hand inside A.G.'s shirt, rubbing her breasts. Another female vendor told the deputy she saw Juan T. rubbing A.G.'s leg via a closed-circuit monitor.

When interviewed by the social worker, Juan T. denied abusing the girls. Juan T. explained he had found A.G. with a boy in a storage shed at the mall. Juan T. claimed the security guard was related to the boy and was "out to get" Juan T. Juan T. stated A.G. and D.G. are his granddaughters and he wanted only "the best for my children and grandchildren."

At the detention hearing on November 16, 2011, the juvenile court continued Ricky T.'s placement with Linda T. and granted Juan T. monitored visitation.

On December 19, 2011, a dependency investigator interviewed security guard Sopia Ponton, who indicated she heard A.G. say her mother knew about the abuse. Also, Ponton heard Juan T. question A.G. jealously, asking her in reference to a young boy, " '[N]ow your [*sic*] fucking him too[?]' " Mall security guard Castaneda told the investigator that when Linda T. arrived at the mall to retrieve A.G. on the day of Juan T.'s arrest, she shouted: " '[T]his bitch is a real liar, get in the car.' "

Linda T. stated she knew of only two times A.G. had gone to the mall. Also, A.G. and D.G. were rarely in the T. home, had very little contact with the family and both girls misbehaved. Linda T. indicated she did not know whether to believe A.G.'s allegations.

On November 17, 2011, Juan T. pleaded no contest to a felony violation of Penal Code section 288, subdivision (a), and a misdemeanor violation of Penal Code section 647.6, subdivision (a)(1). He was granted probation on condition, inter alia, he serve one year in jail, commencing January 30, 2012.

On December 16, 2011, Juan T. admitted to the dependency investigator he rubbed A.G.'s stomach and breasts in his booth at the mall. Juan T. stated he "reacted as a man," he should not have done this and he had never done anything like this before. Juan T. denied abuse of D.G. and indicated he hoped he would be permitted to return to his wife and grandson.

A supplemental report filed January 20, 2012, indicated Linda T. stated she would not live with Juan T. after his release from jail but Juan T. would help her to raise Ricky T. Linda T. indicated she now believed A.G.'s allegations but not D.G.'s. Christina stated the allegations were a "bunch of bologna" and she did not plan to limit Juan T.'s access to her children. Christina asserted the allegations were based on jealousy arising from the T.s' purchase of a new home.

On January 20, 2012, the juvenile court received the social reports into evidence and heard argument. The Department argued section 355.1, subdivision (d) shifted the burden to Juan T. to show jurisdiction was not proper. Counsel for Juan T. asserted there had been no showing Ricky T. was at risk of harm and Juan T.'s statement, that he reacted as a man to 12-year-old A.G., reveals he is attracted to physically mature females, not immature males. Further, because of his autism, Ricky T. was unaware of the abuse.

The juvenile court sustained the petition and declared Ricky T. a dependent under section 300, subdivisions (b) and (d).[2] In sustaining the petition, the juvenile court relied on the rebuttable presumption a child in the care of a guardian who has been convicted of sexual abuse is at substantial risk of abuse or neglect (§ 355.1, subd. (d)), and cases which hold sexual abuse of a female places her male siblings at substantial risk of harm (*In re P.A., supra,* 144 Cal.App.4th 1339; *In re Andy G., supra,* 183 Cal.App.4th 1405). The juvenile court noted sexual assault is an act of "power, control, humiliation and degradation. It has nothing to do with sexual attraction." The juvenile court noted existing case law did not address this point and expressed the hope it soon would be included as a factor to consider in cases of this nature. The juvenile court ordered Ricky T. removed from Juan T.'s care and released

---

[2] As sustained, the petition alleged that on August 22, 2011, and on numerous prior occasions after February of 2011, Juan T. sexually abused A.G. by fondling her breasts, buttocks and vagina, and attempting to kiss the child. On November 17, 2011, Juan T. pleaded no contest to violations of Penal Code section 288, subdivision (a) and section 647.6, subdivision (a). A second count alleged Juan T. sexually abused D.G. on numerous prior occasions after 2010 by fondling the child's breasts and vagina. Such sexual abuse by Juan T. endangers Ricky T.'s physical health and safety and places the child at risk of physical harm, damage and sexual abuse.

the child to Linda T. and maternal aunt Christina. The juvenile court ordered the Department to provide family reunification services and granted Juan T. monitored visitation.

## CONTENTIONS

Juan T. contends the juvenile court improperly relied on section 355.1, subdivision (d) to sustain the dependency petition and, absent the presumption, his molestation of A.G. and D.G. was insufficient to justify jurisdiction over Ricky T.

## DISCUSSION

1. *The presumption of section 355.1, subdivision (d), applied and was unrebutted.*

In finding Ricky T. a dependent, the juvenile court relied, inter alia, on the burden-shifting provision of section 355.1, subdivision (d), which states: "Where the court finds . . . a guardian . . . has been previously convicted of sexual abuse as defined in Section 11165.1 of the Penal Code . . . that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence."

The offenses to which Juan T. pleaded no contest are included among the offenses listed in Penal Code section 11165.1. (See Pen. Code, § 11165.1, subds. (a), (b)(4).) Thus, a presumption arose under section 355.1, subdivision (d) that Ricky T. was a child described by section 300, subdivisions (b) and (d), and Juan T. offered no evidence to rebut the presumption. Thus, the juvenile court properly could rely on the presumption in declaring Ricky T. dependent. (See *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1041 [14 Cal.Rptr.2d 179].)

Juan T. argues the Department forfeited the right to rely on section 355.1, subdivision (d) because it failed to give notice of its intent, citing *In re A.S.* (2011) 202 Cal.App.4th 237, 243 [134 Cal.Rptr.3d 664]. However, *In re A.S.* involved section 355.1, subdivision (a), which creates a presumption in favor of dependency when "competent professional evidence" indicates a child has suffered a type of injury or detrimental condition that "would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor . . . ." (§ 355.1, subd. (a).) In *In re A.S.*, the juvenile court did not rely on the presumption and the Department essentially raised it

for the first time on appeal. (*In re A.S., supra,* at pp. 242–243.) *In re A.S.* held the social services agency should give "clear-cut" notice of its intent to rely on section 355.1, subdivision (a), and should cite the statute in the dependency petition. (202 Cal.App.4th at p. 243.)

In Juan T.'s case, the Department relied on subdivision (d) of section 355.1, which is triggered by the fact of a criminal conviction. Given the certainty of proof of a criminal conviction (see Evid. Code, § 452.5), and because the fact of a prior sexual abuse conviction is uniquely within the defendant's knowledge, notice is less critical when dealing with section 355.1, subdivision (d), than when the Department relies on "competent professional evidence" to trigger the presumption under section 355.1, subdivision (a).

Further, Juan T. did not object at the adjudication to the Department's reliance on section 355.1, subdivision (d), or request a continuance to obtain evidence to rebut the presumption. Thus, Juan T. cannot now complain the Department failed to give notice of its intent to rely on section 355.1, subdivision (d) in the dependency petition. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746]; *People v. Saunders* (1993) 5 Cal.4th 580, 589–590 [20 Cal.Rptr.2d 638, 853 P.2d 1093] [if a party fails to raise an error in the trial court so that it may be corrected, the reviewing court ordinarily will consider the claim of error forfeited].) Here, Juan T. discussed the applicability of the presumption at adjudication but failed to object on the ground he seeks to raise on appeal. Because any error in this regard could have been corrected by a continuance, we find Juan T. has forfeited any claimed error in the lack of notice.

In sum, the juvenile court properly considered Juan T.'s failure to rebut the presumption of section 355.1, subdivision (d) in assuming jurisdiction over Ricky T. under section 300, subdivisions (b) and (d). Moreover, even without the presumption, substantial evidence supported the juvenile court's exercise of jurisdiction.

2. *Even absent the presumption of section 355.1, subdivision (d), the evidence showed Ricky T. was at risk of harm.*

Juan T. contends there was no showing, at the time of the jurisdiction hearing, that Ricky T. was at substantial risk of serious physical harm in the future. (*In re David M.* (2005) 134 Cal.App.4th 822, 829 [36 Cal.Rptr.3d 411].) Juan T. argues he never abused or neglected Ricky T. and there was no evidence Juan T. was sexually attracted to males of any age. Juan T. relies on a line of cases which hold male siblings of sexually abused females generally are not at risk of sexual abuse. (See *In re Alexis S.* (2012) 205 Cal.App.4th 48, 55–56 [139 Cal.Rptr.3d 774]; *In re Maria R.* (2010) 185 Cal.App.4th 48,

65–68 [109 Cal.Rptr.3d 882]; *In re Rubisela E.* (2000) 85 Cal.App.4th 177, 197–198 [101 Cal.Rptr.2d 760].)

■ First, as noted by the Department, Juan T. boldly and brazenly committed sexual abuse of A.G. at the mall in the presence of other vendors before he was apprehended. Given that A.G. stated Juan T. also abused her in his home, the juvenile court reasonably could conclude Ricky T. was at risk of being exposed to Juan T.'s sexual abuse of other children in Ricky T.'s presence even if Ricky T. were not at risk of being touched inappropriately by Juan T. Sexual abuse of other children in Ricky T.'s presence would also constitute annoying or molesting Ricky T. within the meaning of Penal Code section 647.6. (See *In re Karen R., supra,* 95 Cal.App.4th at pp. 89–90.) Thus, Ricky T. was at risk of being a victim of sexual abuse as defined in section 300, subdivision (d).

With respect to Juan T.'s claim he was attracted only to mature females, we note he began abusing D.G. when she was only nine years of age. Moreover, Ricky T. was especially vulnerable given his age and autism, his family's disbelief of the sexual abuse allegations and the indication his family intended to continue to permit Juan T. to have access to the children in the home.

Given these circumstances, the juvenile court properly relied on a line of cases, several authored by this division, which disagree with the cases cited by Juan T. and hold "aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior." (*In re P.A., supra,* 144 Cal.App.4th at p. 1347; accord, *In re Andy G., supra,* 183 Cal.App.4th at p. 1414; *In re Karen R., supra,* 95 Cal.App.4th at pp. 90–91.) Although the sex abuse victims were not Ricky T.'s siblings and did not reside in Juan T.'s home at the time of the referral, the victims had known Juan T. since they were four and two years old, they considered Juan T. their grandfather and he considered them his grandchildren. Because all three children were in a grandparent relationship with Juan T., we decline to distinguish the cases cited by the trial court on the basis that Ricky T. and the abused girls were not siblings.

Therefore, pending further guidance from the California Supreme Court, we reject the notion male children are not at risk of harm in the care of an individual who has committed sex offenses against female children and conclude the evidence supported the juvenile court's finding Ricky T. was at

substantial risk of harm within the meaning of section 300, subdivisions (b) and (d) if Juan T. were permitted to remain in the home.[3]

### DISPOSITION

The orders under review are affirmed.

Kitching, J., and Aldrich, J., concurred.

---

[3] The issue whether male siblings of sexually abused females are at risk of harm is currently under review in *In re I.J.* (2012) 207 Cal.App.4th 1351 [144 Cal.Rptr.3d 503], review granted September 19, 2012, S204622.