Filed 10/29/13  In re A.F. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.F. et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICARDO M.,<br><br>Defendant and Appellant. | B246481<br>(Los Angeles County Super. Ct. No. CK95688) |

APPEAL from orders of the Superior Court of Los Angeles County, Rudolph Diaz, Judge.  Affirmed.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Office of the County Counsel, James M. Owens, Assistant County Counsel, Kirstin J. Andreasen, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Ricardo M. (Father) appeals the juvenile court's order asserting jurisdiction over Father's infant son, J., based on Father's molestation of J.'s half-sister, A.F., contending it was not supported by substantial evidence. Father also challenges the dispositional order, removing J. from his custody and limiting him to monitored visitation. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this appeal, the essential facts are not in dispute. Father is the biological father of two children, Katie born in May 2006 and J. born in August 2012. He is the stepfather of A.F., born in October 1999. He has been living with Mother and raising A.F. as his daughter since 2002.[1]

One night in December 2010, A.F. and her younger sister, then four, decided to sleep on the floor of their parents' bedroom on an extra mattress. After Mother left early in the morning, father carried the two girls to the bigger mattress, where he and Mother slept. He then laid down beside A.F. and began to rub her breasts.[2] AF first tried keeping still and then started moving as if she were about to awaken, hoping one or the other would induce him to stop. Neither did. Father continued the fondling for at least five minutes. He stopped after Katie began to stir. Father went into the bathroom and when he emerged, pretended that nothing had happened. A.F. called Mother that morning and told her what Father had done. Mother confronted Father, who denied touching A.F. Nonetheless, Mother made

---

[1]     A.F.'s father has not had a relationship with the child for many years and was not a party to the proceedings. A.F. expressed no interest in seeing him and stated that she considered Father to be her father.

[2]     Based on her birthdate and the undisputed evidence concerning the date of the incident, A.F. would have been 11 years, two months old when it occurred. However, both counsel for the Department of Children and Family Services (DCFS) and A.F.'s attorney asserted at the jurisdictional hearing that she was 12, and that is the age set forth in the trial court's jurisdictional finding. This discrepancy does not affect our analysis.

him leave the house. Mother did not call the authorities because A.F. said she did not want them involved.

A few months after the incident, Mother allowed Father to return to the family home. A.F. did not object to Father's return. He told Mother that if he had touched A.F.'s breasts it was unintentional. He did not touch A.F. again, and there was no evidence that he inappropriately touched his biological daughter.[3]

The abuse was not reported for nearly two years. In September 2012, shortly after J.'s birth, when A.F. was in middle school, she begun cutting herself.[4] She was called into the principal's office, where she reported the abuse. After DCFS intervened, Father agreed to leave the family home and the three children were detained with Mother. At the detention hearing, the court found a prima facie case for detaining all three children from Father, but that allowing them to remain in the custody of Mother did not create a substantial risk of detriment.

On December 5, 2012, the court held a hearing to determine the propriety of jurisdiction under Welfare and Institutions Code section 300.[5] Counsel for Father argued that there might have been an innocent explanation for his actions, such as attempting to hug and warm A.F. on a cold morning. Assuming an inappropriate touching had occurred, counsel argued that jurisdiction should not be imposed over J. because he was a male biological child who was not born at the time the molestation occurred, the abuse occurred only once, and there was no evidence of Father's physical abuse, domestic violence, or drug or alcohol use.[6] Counsel for

---

[3]   Respondent's brief states that Father never apologized to A.F. According to A.F., he did apologize sometime later, saying he felt ashamed and stupid and had let her down.

[4]   A.F. attributed the cutting to the incident with Father, stating it had "scarred [her] forever."

[5]   Undesignated statutory references are to the Welfare and Institutions Code.

[6]   Father's counsel relied on *In re Rubisela E.* (2000) 85 Cal.App.4th 177, later disapproved by the Supreme Court in *In re I.J.* (2013) 56 Cal.4th 766 (*I.J.*).

3

DCFS argued that the aberrant nature of Father's behavior, including fondling a very young girl in the same bed where his even younger daughter was sleeping, indicated that J. was at risk. Counsel also noted that A.F. had been raised by Father, and that the two had a father-daughter relationship even though they were not biologically related. The children's attorney asked that the petition be sustained and that all the children, including J., be included in the petition.

The court found: "[Father] sexually abused [AF] when the child was 12 years old [by] fondl[ing] the child's breasts. . . . Such sexual abuse by [Father] endangers the child's physical health and safety and places the child and the child's siblings . . . at risk of physical harm, damage, [and] sexual abuse . . . ."[7] Based on that finding, the court sustained jurisdiction over all three children under section 300, subdivisions (b) (failure to protect), (d) (sexual abuse), and (j) (abuse of sibling). With respect to J., the court stated that the conduct "falls under the (j) count without any problem whatsoever."

Turning to disposition, the court also found by clear and convincing evidence that there was a substantial danger to the children's physical health, safety, protection, and physical or mental wellbeing if they were returned home to Father, and that there were no reasonable means to protect them without removing them from Father's physical custody. The court ordered Father to participate in a DCFS-approved program for sexual abuse counseling for perpetrators and individual counseling to address the issues of the sustained petition. Father appealed.

---

[7]     The parties agreed that the allegations pertaining to Mother would be stricken from the petition.

## DISCUSSION

A. *Jurisdiction*

In order to assert jurisdiction over a minor, the juvenile court must find that the child falls within one or more of the categories specified in section 300. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) DCFS bears the burden of proving by a preponderance of the evidence that the minor comes under the juvenile court's jurisdiction. (*Ibid.*; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 329.) Challenging the court's jurisdictional order with respect to J. only, Father contends substantial evidence does not support assertion of jurisdiction because his actions in fondling A.F. did not give rise to a reasonable inference that he would abuse his son.

"We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.] We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citation.]" (*In re David M.* (2005) 134 Cal.App.4th 822, 828.) A finding is not supported by substantial evidence if it is based solely on unreasonable inferences, speculation, or conjecture. (*In re H.B.* (2008) 161 Cal.App.4th 115, 120.)

Prior to our Supreme Court's decision earlier this year in *I.J.*, *supra*, 56 Cal.4th 766, courts were divided over whether evidence of sexual abuse of a child of one gender justified the assertion of jurisdiction over a child of another gender. In *In re Rubisela E.*, disapproved in part in *I.J.*, the appellate court reversed a jurisdictional finding that the three younger brothers of a 13-year old female victim of sexual abuse were at risk of similar abuse where there was no evidence of any suspicious behavior toward the boys on the part of the father, and no evidence of any homosexual actions or tendencies. (*In re Rubisela E.*, *supra*, 85 Cal.App.4th at pp. 198-199.) Similarly, in *In re Maria R.* (2010) 185 Cal.App.4th 48, disapproved

5

in part in *I.J.*, *supra*, 56 Cal.4th 766, the appellate court reversed a jurisdictional finding over a young boy that had been based on the father's sexual abuse of the boy's older sisters, noting the lack of "any scientific authority or empirical evidence to support the conclusion that a person who sexually abuses a female child is likely to sexually abuse a male child." (*In re Maria, supra,* 185 Cal.App.4th at p. 68; see also *In re Jordan R.* (2012) 205 Cal.App.4th 111, 137-138 [upholding juvenile court's finding that three-year-old boy whose father sexually abused 13-year-old niece was not in danger of sexual abuse].)

Other appellate decisions had held that any type of "aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior." (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1347; accord, *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1414; *In re Karen R.* (2001) 95 Cal.App.4th 84, 90-91.)

Some courts focused on whether younger children would be at risk as a result of witnessing a parent's sexual activities with a sibling. (See, e.g., *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1332 [father's sexual abuse of 11-year old with mental disabilities on couch in living room where abuse could have been observed by other children supported "the commonsense conclusion that most every person in the family home was at risk of sexual abuse"]; *In re R.V.* (2012) 208 Cal.App.4th 837, 846-847 [upholding jurisdictional finding where boy witnessed father's abuse of older sibling and attempted to help her resist]; *In re Ricky T.* (2013) 214 Cal.App.4th 515, 522-523 [upholding assertion of jurisdiction over boy where his guardian sexually abused guardian's step-granddaughters in public locations].) In *In re Alexis S.* (2012) 205 Cal.App.4th 48, disapproved in part in *I.J.*, *supra*, 56 Cal.4th 766, this court left intact a jurisdictional finding, but reversed a dispositional order removing two boys from their father's custody and providing for monitored visitation where the father had twice inappropriately

6

touched an older stepdaughter. The juvenile court found the boys were at risk of emotional injury from residing in a home where sexual abuse occurred and possibly observing the abuse, but as the father was no longer residing in the family home and was obeying a no-contact order with respect to the girl, we found no clear and convincing risk of similar abuse if the father were permitted unmonitored contact with the boys. (205 Cal.App.4th at pp. 53, 55-56.)

The Supreme Court resolved the apparent conflict in appellate authority in *I.J.*, *supra*, 56 Cal.4th 766.[8] There, the juvenile court had asserted jurisdiction over five children -- two girls and three younger boys -- based on the father's prolonged sexual abuse of the oldest girl, his 14-year old biological daughter. (56 Cal.4th at p. 770.) The father contended evidence of his abuse of his daughter, standing alone, did not support the court's finding with respect to his sons. (*Id*. at p. 772.) The court disagreed. It focused in particular on section 355.1, subdivision (d), which provides that a finding of sexual abuse by a parent in a prior proceeding is prima facie evidence that the child who is the subject of the current proceeding is subject to the court's jurisdiction. As the court noted, when it enacted subdivision (d), the Legislature stated that the "'children of the State of California are placed at risk when permitted contact with a parent or caretaker who has committed a sex crime.' (Stats. 1999, ch. 417, § 1, p. 2780.)" Cognizant that the provision did not apply where the finding was made in the same proceeding, the court nevertheless found section 355.1, subdivision (d) relevant because "it evinces a legislative intent that sexual abuse of someone else, without more, at least *supports* a dependency finding." (56 Cal.4th at p. 779.) As the court noted, "[n]othing in [the] subdivision suggests it is limited to sexual abuse of a person of the same gender as the child before the court." (*Ibid*.) Based on this expression of legislative intent,

---

[8] As the Supreme Court stated in *I.J.*, to some extent, the cases were distinguishable on their facts, rather than conflicting. (*I.J., supra,* 56 Cal.4th at p. 775.)

7

the court held that a juvenile court is permitted, although not compelled, to assume all the children in a household are at risk whenever one child is sexually abused. (*Id.* at p. 780.)[9]

The court further explained that the criteria juvenile courts should consider in determining the existence of risk with respect to a child whose sibling has been sexually abused are set forth in section 300, subdivision (j), which applies if the child's sibling has been abused or neglected as defined in subdivisions (a) (physical harm), (b) (failure to protect), (d) (sexual abuse), (e) (severe physical abuse), or (i) (acts of cruelty). To determine whether there is a substantial risk that the brother or sister will be abused or neglected as defined in one of those subdivisions, subdivision (j) directs courts to consider "'the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.'" (*I.J., supra,* 56 Cal.4th at p. 774, quoting § 300, subd. (j).) "The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within any of the subdivisions enumerated in subdivision (j)." (56 Cal.4th at p. 774, italics omitted.)

---

[9] In so doing, the court disapproved, to the extent inconsistent with its holding, the decisions in *In re Rubisela E.*, *supra*, 85 Cal.App.4th 177 and *In re Maria R.*, *supra*, 185 Cal.App.4th 48, and this court's holding *In re Alexis S.*, *supra*, 205 Cal.App.4th 48. Although this court did not overturn the finding of dependency as the Supreme Court indicated in *I.J.* (see *I.J., supra,* 56 Cal.4th at p. 775), we did suggest the need for evidence of a "proclivity [on the part of the parent] to abuse or molest sexually immature children or males of any age, or to expose them to inappropriate sexual behavior" to support the existence of a risk of harm. (205 Cal.App.4th at p. 55.) We presume this is the portion of the opinion the Supreme Court disapproved.

The court further held that no scientific evidence of specific risk of abuse to a male sibling from a parent's abuse of a female child need be shown. (*I.J.*, *supra*, 56 Cal.4th at p. 779.) While assuming that female children were at greater risk than their male siblings of abuse from a parent who had already molested a female, the court noted that "this does not mean the risk to the sons is nonexistent or so insubstantial that the juvenile court may not take steps to protect the sons from that risk." (*Id*. at 780.)

Finally, the court emphasized that a juvenile court's assumption of jurisdiction under section 300 did not amount to a determination that a father or mother would lose all parental rights. As the court observed, "'it is merely a first step, and the system includes many subsequent safeguards to ensure that parental rights and authority will be restricted only to the extent necessary for the child's safety and welfare.'" (*I.J.*, *supra*, 56 Cal.4th at p. 780, quoting *In re Ethan C.* (2012) 54 Cal.4th 610, 617.)

We read the Supreme Court's decision in *I.J.* to signify that abuse of one sibling -- regardless of the child's gender -- may support jurisdiction over a sibling of another gender, and that it is the juvenile court's duty to evaluate the circumstances to determine if the assumption of jurisdiction is appropriate. Here, the court recognized the appropriate statutory basis for asserting jurisdiction. It considered the argument of Father's counsel that the abuse may have been innocent, and that if it occurred, it was isolated and unaccompanied by any other abuse. It heard counsel for DCFS focus on the girl's youth, the length of the father-daughter relationship, and the fact that Father molested one child while another younger one was present. Finally, the court heard from counsel for the minors, who advocated that jurisdiction be asserted over all three children. After hearing counsels' argument, the court found jurisdiction proper under subdivision (j) "without any problem whatsoever." On this record, we presume the juvenile

court applied the correct "totality of the circumstances" criteria in finding J. at risk of sexual abuse. (See Evid. Code, § 664; *Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1308 [where record is silent, appellate court presumes trial court knew and applied correct statutory and case law].)

Substantial evidence supported the court's determination. There is no question that A.F. was a young pre-adolescent at the time of the abuse. Father had raised her for eight years, and she saw him as her parent. Father initiated the molestation when he believed her to be asleep and vulnerable. It occurred over several minutes in the presence of his four-year old daughter Katie, who could easily have awakened and observed it. Although Father molested A.F. only once, the court could reasonably conclude this was because the girl reported the incident to Mother the same day, and Mother immediately took action to remove Father (temporarily, as it turned out) from the family home. Otherwise, the abuse might have recurred and progressed in severity. (See *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 970 [observing in response to father's argument that abuse of stepdaughter occurred years earlier that "it was mother's installation of locks on the doors and taking father's key that likely stopped the abuse, not any change in father's desire for sex with preteen girls"].) Father never clearly admitted the abuse or sought help to prevent a similar incident from recurring. In short, the totality of the circumstances surrounding the abuse of A.F. supported that the other children in the household were at risk of similar abuse. We find no basis to reverse the court's jurisdictional finding.

B. *Disposition*

Father also challenges the court's dispositional order with respect to J. After finding that a child is a person described in section 300 and therefore the proper

subject of dependency jurisdiction, the court must determine "the proper disposition to be made of the child." (§ 358.) "A dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of [at least one of the circumstances listed in paragraphs (1) to (5)] . . . ." (§ 361, subd. (c).) Section 361, subdivision (c)(1) permits removal if "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." Subdivision (c)(4) permits removal if "[t]he minor or a sibling of the minor has been sexually abused, or is deemed to be at substantial risk of being sexually abused, by a parent . . . and there are no reasonable means by which the minor can be protected from further sexual abuse or a substantial risk of sexual abuse without removing the minor from his or her parent . . . ."

There is no requirement of proof of actual harm to the child by the parent; the standard is substantial risk or danger of harm. (*In re Kristin H*. (1996) 46 Cal.App.4th 1635, 1656-1658.) On review of the court's dispositional findings, "we employ the substantial evidence test, however bearing in mind the heightened burden of proof." (*Id*. at p. 1654.)

Father contends the court's determination that J. could be protected only by removal from his physical custody was not supported. He attempts to rely on this court's opinion in *In re Alexis S*., *supra*, 205 Cal.App.4th 48, where we reversed a dispositional order removing two boys, ages ten and eight, from their father's custody, and limiting the father to monitored visitation, after the father was found to have inappropriately touched and kissed their adolescent half-sister. As noted, the Supreme Court disapproved our conclusion that the lack of evidence of any

11

proclivity on the father's part to abuse or molest sexually immature children or males of any age undermined the finding of risk of harm. Moreover, the case is distinguishable. There, the court's primary concern was emotional injury to the boys from being in a home where sexual abuse was occurring or might be observed. However, by the time of the dispositional hearing any such risk had been substantially reduced, as appellant had moved out of the family home and was in compliance with an order prohibiting all further contact with the half-sister. Here, the court did not focus on emotional injury, but found J. to be at risk based on the totality of the circumstances surrounding the abuse of A.F. The father in *Alexis S.* had completed 12 individual counseling sessions and 37 parenting classes by the time of the dispositional hearing. Here, Father has never undergone any type of therapy or counseling. The boys in *Alexis S.* were old enough to report any inappropriate behavior on the part of their father and to visit their father outside the family home, thus avoiding any uncomfortable interaction between the father and the victim. J. is an infant and unable to assert himself verbally. These factors not only distinguish *Alexis S.*, but also support the court's determination that there was no reasonable means to protect J. without removing him from Father's physical custody. We find no basis to reverse the court's determination.

**DISPOSITION**

The jurisdictional and dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



EPSTEIN, P. J.



SUZUKAWA, J.