Filed 4/7/16  In re Isabella A. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re ISABELLA A., a Person Coming Under the Juvenile Court Law. | B265799 |
| | (Los Angeles County Super. Ct. No. DK09924) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ALEJANDRO A., | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Joseph A. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Timothy M. O'Crowley, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Appellant Alejandro A. (father) challenges the juvenile court's jurisdictional findings under Welfare and Institutions Code[1] section 300, subdivisions (b) and (d) regarding his one-year-old daughter, Isabella A.  The evidence showed that when father was 15 years old he coerced his 10-year-old sister, Jessica A., to orally copulate him in exchange for allowing her to play his videogame.  Father principally contends the evidence was insufficient to support jurisdiction because the sexual abuse occurred four years earlier when he was a minor.  Father also argues the evidence was insufficient to remove Isabella from his physical custody.  We reject these contentions and affirm.

## FACTS AND PROCEDUREAL BACKGROUND

Because resolution of this appeal turns upon the existence of substantial evidence supporting the juvenile court's judgment and disposition order, we state the facts in the manner most favorable to the court's determination, resolving all evidentiary conflicts in favor of the court's findings.  (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*); *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

Isabella A. was born in 2013.  At the time of her birth, Isabella's mother, Monica Y., was 16 years old and father was 18 years old.  When the family came to the attention of the Los Angeles County Department of Children and Family Services (the Department), father, mother and Isabella were living with the paternal grandparents in a two-bedroom, one-bathroom apartment that they shared with father's adult sister, Elizabeth A., and father's minor brother and sister, F.A., age 15, and Jessica A., age 14.

On February 6, 2015, father's minor sister, Jessica, reported to her school counselor that four years earlier, when Jessica was 10 years old, father had made her put her mouth on his " 'bottom parts.' "  The counselor reported Jessica's statement to the Los Angeles Police Department, which dispatched officers to investigate.

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

Jessica told the officers that on two occasions during the summer between her fourth and fifth grade, her older brother (father) had made her put her mouth on his penis before he would allow her to play his videogame. Father was 15 or 16 years old at the time. Concerning the first incident, Jessica told the officers that she had asked father if she could play his videogame before going to the bathroom to wash her hands. Father followed her to the bathroom and closed the door. He then unzipped his pants, took out his penis, and told Jessica that if she wanted to play the videogame, she had to put her mouth on his penis. Jessica placed father's penis in her mouth for approximately three minutes.

Jessica told the officers the second incident occurred much as the first. She asked her brother if she could play his videogame, to which father responded that she had to "do the same thing as last time." They then went to the bathroom where father placed his penis in Jessica's mouth for approximately two minutes. Jessica felt uncomfortable, interrupted father, and told him she would not "do it again." Since this incident, Jessica reported there had been no other sexual contact between her and her brother.

The officers interviewed father at the paternal grandparents' residence. Father denied Jessica's allegations. He told the officers he would "never do that to his baby sister," adding that, "[i]f he ever did something like that, it would be with his older sisters." The officers reported Jessica's allegations to the Department. After meeting with father, the Department secured his agreement to a safety plan requiring him to move out of the apartment.

On February 24, 2015, the Department interviewed the paternal grandmother, Jessica and father's minor brother, F.A. The grandmother confirmed that she and the paternal grandfather believed Jessica and had asked father to leave the home. However, she also reported that they had allowed father to visit the apartment on a daily basis for dinner, in violation of the safety plan.

Jessica confirmed the details of the sexual abuse by father in her interview with the Department. She said she had not reported the abuse to the paternal grandparents when it occurred because she was afraid they would not believe her. Jessica explained

that she now trusted her parents to believe her, because her adult sister, Elizabeth, had recently disclosed that she was also molested by a relative when she was a child.[2] Jessica told the social worker that she was not afraid of her brother, but wanted him to get help. She explained that when she told father she would no longer submit to his abuse, father responded, " '[T]hat's fine[,] just never tell anybody.' "

F.A. reported that Jessica told him about the sexual abuse shortly after it occurred. She was crying when she told him and asked him not to tell anyone or she would " 'hurt herself.' "

The social worker also interviewed father, who continued to deny any sexual contact with Jessica. He maintained Jessica was lying and expressed resentment about the effect the allegations were having on his family. He told the social worker, " 'I don't need this. This is affecting my family. I do not want any police or social workers; I just want this to end. I want you to hurry up and close this up.' " When the social worker asked father if he would be willing to participate in services that might avert Isabella's removal from his custody, father refused, stating, " 'I don't need help.' "

On May 18, 2015, the juvenile court held a combined hearing on jurisdiction and disposition. The Department submitted its report requesting that the court assume jurisdiction based, inter alia, on the risk of harm to Isabella posed by father's history of sexually abusing his minor sister, and remove Isabella from father's physical custody while he participated in a court ordered counseling program for perpetrators of sexual abuse.[3]

---

[2]    At age 21, Elizabeth disclosed to her parents that she was sexually abused by a cousin when she was five years old. Elizabeth said she kept the abuse secret for more than a decade because "she was afraid, as her perpetrator was a relative."

[3]    In a trial brief submitted in advance of the hearing, the Department also emphasized that at the time father coerced his minor sister to trade sexual acts for videogame play, he began a four-year relationship with Isabella's mother, who was 14 years old at the time. That relationship led to Isabella's conception before the mother's 16th birthday. The Department argued this sexual relationship, like the abuse of father's sister, violated Penal Code provisions prohibiting sexual contact with minors and supported the jurisdictional allegation under section 300, subdivision (d).

4

Jessica testified at the hearing that there had been only one incident and that since it occurred, father had not been sexually inappropriate with her. She also testified that she had recently overheard a conversation in which her parents discussed the possibility that father might go to jail, and that shortly thereafter, she recanted the statement she gave to the police. While she regretted that the incident had resulted in court proceedings, she affirmed that she had given a truthful statement to the police and that she believed father needed help.

Addressing jurisdiction, father's counsel argued the discrepancy between Jessica's report to the police and her testimony at the hearing undermined her credibility and warranted an untrue finding on the sexual abuse allegation. Mother's counsel joined with father in arguing the petition should be dismissed, while the child's counsel argued it should be sustained.

The juvenile court sustained the petition for dependency jurisdiction.[4] The court found Jessica credible and observed that any "wavering or hedging" on her part had clearly been the product of her "either getting pressure from the family" or not feeling "entirely loyal to her brother."

As for disposition, the court indicated it was tentatively inclined to allow father to return home so long as protections were in place to ensure he was not left alone with Isabella. Arguing against the tentative, the Department insisted there were no reliable protections at the home to ensure Isabella's safety, since the mother, like father, continued to deny that Jessica had been sexually abused. The Department further stressed that mother herself had been a minor when Isabella was conceived and that both

---

[4]    Apart from the sexual abuse allegations against father, the petition also included an allegation under section 300, subdivision (a) that mother physically abused Isabella by striking the one year old on the back with an open hand as a form of discipline, and an allegation under section 300, subdivision (b) that father failed to protect Isabella from mother's physical abuse. The juvenile court sustained both allegations. Mother is not party to this appeal and does not challenge the court's finding. While father challenges the section 300, subdivision (b) finding, we need not address it in this appeal because we conclude the sustained sexual abuse finding under section 300, subdivision (d) is sufficient to sustain the juvenile court's jurisdiction. (See fn. 5, *post.*)

she and father needed treatment to address appropriate sexual boundaries before Isabella could be safe in father's custody. Isabella's counsel agreed with the Department that there was no practical way to ensure Isabella's safety or to monitor the parents' compliance with the court's order, particularly given Isabella's extremely young age. In response, father's counsel emphasized that the alleged incidents were four years old and that father had not had any inappropriate contact with Jessica since then.

After hearing argument, the court discarded its tentative and found, by clear and convincing evidence, that returning Isabella to father's custody would pose a substantial danger to her safety and that no reasonable means existed to keep the child safe without removal. While the court acknowledged the triggering incidents were "rather stale," it found father's continued denials of the abuse, coupled with his failure to seek treatment to address the root causes of his sexual misconduct, constituted compelling evidence that he still posed a risk to Isabella. The court also found mother could not be relied upon to protect Isabella at all times and, therefore, it would not be safe to return the child to father's custody until he had shown some progress in treatment. Accordingly, the court ordered Isabella removed from father's custody and ordered father to receive treatment for predators of sexual abuse. The order granted the Department discretion to liberalize visitation and to allow father to return to the home, if appropriate, based on his progress in treatment.

## DISCUSSION

1. *Substantial Evidence Supports the Jurisdictional Sexual Abuse Finding*

Father contends the evidence was insufficient to support the juvenile court's finding under section 300, subdivision (d) that a substantial risk existed that Isabella

would be sexually abused.[5] " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citation.]" [Citation.]' " (*I.J., supra,* 56 Cal.4th at p. 773.)

Section 300, subdivision (d) authorizes juvenile court jurisdiction where there is evidence of " a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household." Penal Code section 11165.1, subdivision (a) defines " 'sexual abuse' " to include "lewd or lascivious acts upon a child" as set forth in Penal Code section 288 and "child molestation" as set forth in Penal Code section 647.6. Penal Code section 288,

---

[5] Father also challenges the court's separate jurisdictional findings, both under section 300, subdivision (b), that (1) his prior sexual abuse of Jessica created a risk that he would fail to protect Isabella from future abuse, and (2) that he failed to protect Isabella from the mother's improper physical disciplining of the one-year-old. (See fn. 4, *ante.*) As a general rule, " '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*I.J., supra,* 56 Cal.4th at p. 773.) Because we conclude the evidence supported the court's jurisdictional finding under section 300, subdivision (d), and the other challenged findings will have no future effect on father's substantive rights, we need not address whether jurisdiction also was proper under section 300, subdivision (b).

7

subdivision (a) makes it a felony for "any person" to willfully commit "any lewd or lascivious act . . . upon or with the body . . . of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person." Penal Code section 647.6, subdivision (a)(1) is violated when "a defendant engages in the requisite annoying or offensive conduct, motivated by an unnatural or abnormal sexual interest in a specific child or children generally." (*People v. Phillips* (2010) 188 Cal.App.4th 1383, 1388.)

Father concedes substantial evidence supports the juvenile court's finding that he sexually abused his minor sister Jessica. Father also acknowledges the broad consensus in case law holding that the sexual abuse of one child may constitute substantial evidence of risk to another child in the household. (See *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 970 [cases addressing dependency jurisdiction under section 300, subdivision (d) "categorically state that aberrant sexual behavior directed at one child in the household places other children in the household at risk"]; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1347 [same]; *In re Ricky T.* (2013) 214 Cal.App.4th 515, 523 [same]; see also *I.J., supra,* 56 Cal.4th at pp. 775-776 [discussing *In re P.A.* with approval].) However, because he was a 15-year-old minor when he sexually abused his 10-year-old sister, father contends the evidence concerning this abuse was insufficient to support the court's finding that he posed a substantial danger to his daughter Isabella. We disagree.

As father frames the argument, the evidence establishing he sexually abused Jessica was irrelevant to the challenged jurisdictional finding because he was not "an adult who had assumed a parenting role toward the child," but rather "a child abusing a child, his sister." This characterization overlooks the crucial age difference between father and Jessica when the abuse occurred—15 years old versus 10 years old—which, according to a study presented to the juvenile court in advance of the jurisdictional hearing, largely dispels father's implicit assertion that this was a simple case of youthful indiscretion or age appropriate play. (See Hall & Hall, *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic*

8

*Issues* (Apr. 2007) 82 Mayo Clinic Proceedings 457, 458 (Hall), cited with approval by *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 884.) The study's authors explain the importance of the age disparity as follows: "A child molester is loosely defined as any individual who touches a child to obtain sexual gratification with the specifier that the offender is at least 4 to 5 years older than the child. The age qualifier is added to eliminate developmentally normal childhood sex play (eg, two 8-year-olds 'playing doctor'). By this definition, a 13-year-old who touches an 8-year-old would be considered a child molester but would not meet criteria to be a pedophile. . . . [However,] [d]ata from [another study] showed that 40% of child molesters, who were later diagnosed as having pedophilia, had molested a child by the time they were 15 years old." (Hall, at p. 458, fn. omitted.)

The salient point, which the trial court reasonably applied in assessing the risk posed to Isabella, is that a 15-year-old's sexual abuse of a 10-year-old child is different from other criminal conduct that is more readily explained by the recklessness of youth. As the study's authors explain, child molestation by a minor, though not itself yielding to a clinical diagnosis, does evidence a potential psychological disorder and can indicate a considerable risk of predatory sexual behavior directed at children in the future. This is not to say that father's youth needed to be disregarded in assessing the risk he posed to his daughter after reaching the age of majority, but rather to recognize that the juvenile court could still have very reasonably concluded based on the evidence that father's sexual proclivities at age 15 were likely to have remained unchanged at age 19, particularly given his unwillingness to seek rehabilitative treatment to address the misconduct.

The same is true of the other evidence father relies on to argue his past sexual misconduct poses no risk to Isabella. Like his minor status at the time of the offense, the fact that four years had passed without another reported incident of sexual abuse, as well as his family members' statements that father had not acted inappropriately with Isabella, were all relevant to the juvenile court's risk assessment, but not dispositive. This

evidence did not compel the juvenile court to dismiss the petition in light of the opposing evidence of risk presented by the Department.

*In re Quentin H.* (2014) 230 Cal.App.4th 608 (*Quentin H.*) is instructive. When he was 18 years old, the father in that case was convicted of forcible oral copulation with a minor under the age of 14 (Pen. Code, § 288, subd. (a)) and required to register as a sex offender. (*Quentin H.*, at p. 611.) Twenty-six years later, the Department filed a petition under section 300, subdivisions (b) and (d) alleging the father's conviction and sex offender status endangered his eight-year-old son and six-year-old daughter. (*Id.* at pp. 610-611.) Relying solely on section 355.1, subdivision (d), which creates a rebuttable evidentiary presumption that a parent who has previously been convicted of sexual abuse poses a substantial risk of harm to a child in his care or custody, the juvenile court sustained the petition and removed the children from the father's custody. (*Quentin H.*, at p. 612.) On appeal the father argued the juvenile court improperly relied on section 355.1 despite evidence in the Department's reports rebutting the presumption. This included evidence that the father had not reoffended in the more than 20 years and statements from his family members that he had not behaved inappropriately with any child in his care. (*Quentin H.*, at p. 615.)

The *Quentin H.* court agreed the father's evidence was sufficient to rebut the presumption, and reversed the jurisdictional finding to the extent the juvenile court had relied exclusively upon section 355.1. Critically, however, the appellate court did not direct the juvenile court to dismiss the petition. Rather, the *Quentin H.* court remanded the matter for the juvenile court to consider all the evidence without regard to the presumption. In doing so, the court expressly recognized that the father's sex abuse conviction, the fact that he had not received any rehabilitative therapy following his conviction, and evidence that he lacked "insight into his own behavior" because he "fail[ed] to take any responsibility for the sexual misconduct" all constituted "substantial evidence" that otherwise would have supported the juvenile court's finding. (*Quentin H., supra,* 230 Cal.App.4th at p. 620.) However, because the juvenile court "did not weigh this evidence or make any findings as to the significance or weight of the Department's

10

evidence relative to [the father's]," but instead relied solely on the section 355.1 presumption, the *Quentin H.* court determined it must remand the matter for the juvenile court to consider "all this evidence in the first instance." (*Quentin H.,* at pp. 620-621.)

Like the *Quentin H.* court, we conclude father's past sexual abuse of his 10-year-old sister, coupled with the showing that he has not received rehabilitative therapy to address the misconduct and that he does not appear to recognize the severity of his actions, all constitute substantial evidence supporting the juvenile court's finding under section 300, subdivision (d). Unlike *Quentin H.*, the record in this case indicates that the juvenile court did weigh the opposing evidence, did consider the fact that the incidents were "rather stale," and nevertheless concluded father's past misconduct created a significant risk of danger to his daughter. Because in reviewing the sufficiency of the evidence " ' "[w]e do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court" ' " (*I.J., supra,* 56 Cal.4th at p. 773), we must affirm the juvenile court's finding on this record.

### 2. *Substantial Evidence Supports the Disposition Order*

Before a dependent child may be taken from the physical custody of a parent, section 361, subdivision (c)(1) requires the juvenile court to find "clear and convincing evidence" of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the [parent's] physical custody." In cases involving sexual abuse, a removal order also is authorized upon a finding by "clear and convincing evidence" that there is a "substantial risk of [the child] being sexually abused, by a parent . . . and [that] there are no reasonable means by which the minor can be protected from . . . a substantial risk of sexual abuse without removing the minor from his or her parent." (*Id.*, subd. (c)(4).)

11

In challenging the juvenile court's disposition order, father deploys essentially the same factual argument he asserted in contesting the jurisdictional finding, focusing primarily on the fact that he was a minor when he sexually abused his younger sister to argue there was an "insufficient nexus" between that misconduct and the "risk that [he] would grow up and sexually abuse his own child as an adult." To bolster the argument, father relies heavily upon the heightened clear and convincing evidence standard of proof that applies to disposition orders under section 361, subdivision (c). Father maintains that standard requires this court to find the evidence was "so clear as to leave no substantial doubt . . . [and] sufficiently strong to command the unhesitating assent of every reasonable mind" about the risk of harm his continued custody posed to Isabella. While father is certainly correct about the standard governing the *juvenile court's* finding, he is mistaken about that standard's applicability to our review of the order on appeal.

Contrary to father's premise, the clear and convincing standard specified in section 361, subdivision (c) is "for the edification and guidance of the trial court and not a standard for appellate review. [Citations.] ' "The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." [Citations.]' [Citation.] Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' " (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881; *In re Amos L.* (1981) 124 Cal.App.3d 1031, 1038 [notwithstanding section 361's heightened proof requirement, "on appeal, the substantial evidence test applies to determine the existence of the clear and convincing standard of proof, the same as in other cases"].) Our task is simply to determine whether there was substantial evidence, contradicted or uncontradicted, upon which the trial court could have reasonably based its removal order. (*I.J., supra,* 56 Cal.4th at p. 773.) We conclude there was.

12

As explained above, the juvenile court reasonably based its substantial risk finding on evidence that father sexually abused his 10-year-old sister when he was 15 years old. That, coupled with the fact that father refused to seek rehabilitative treatment to address the misconduct, was sufficient for the juvenile court to find that he posed a substantial danger to Isabella's physical health until his progress in treatment indicated otherwise. (See *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1414-1415 [order removing son supported by substantial evidence where the father sexually abused step daughters and denied he needed sexual abuse counseling for perpetrators].)  Based on this record, it was not unreasonable for the juvenile court to conclude that the underlying causes of father's misconduct had not been adequately addressed or resolved and that returning Isabella to father's physical custody still posed a substantial danger to her physical and mental well-being.

## DISPOSITION

The judgment and disposition order are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



HOGUE, J.[*]

We concur:



EDMON, P. J.



ALDRICH, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


13