Filed 6/24/22 In re Gabriel T. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re GABRIEL T., a Person Coming Under the Juvenile Court Law. | B313347 (Los Angeles County Super. Ct. No. 19CCJP07244A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>JESUS T.,<br><br>　　Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge. Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

Appellant Jesus T. (father) appeals from jurisdiction and disposition orders declaring his child, Gabriel T., a dependent of the court, and removing the child from father's custody. Father contends there is insufficient evidence to support the jurisdictional findings that his sexual abuse of Gabriel's sister, Guadalupe T. (a child not at issue in this appeal), placed Gabriel at risk of serious physical and emotional harm. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Gabriel (born July 2006) and his sister Guadalupe T. (born May 2010) came to the attention of the Los Angeles Department of Children and Family Services (DCFS) on August 14, 2019, when Guadalupe reported to the police that she had been sexually abused by father inside his home. Guadalupe reported that while she was on a bed by herself, father entered the room and got on top of her, kissing Guadalupe and moving his body "in a[n] up and down motion." At some point, Guadalupe pushed father aside and left the room. Inside the home during the incident were three other adults, Gabriel and Guadalupe's stepsister, and Gabriel. Guadalupe also informed police that father had sexually abused her during two incidents when she was five and six years old, respectively. Despite having a vague memory of each incident, she stated that in the first incident, father placed Guadalupe on a bed and rubbed his penis against her vagina, and in the second he placed Guadalupe on a couch and placed his penis inside her vagina.

Guadalupe restated the allegations in substantial similarity when first interviewed by a dependency investigator. During Gabriel's interview, Gabriel stated that he had never been sexually abused by father, and was unaware of father's sexual abuse of Guadalupe prior to August 2019. Father denied abusing Guadalupe at any time, and suggested mother had influenced Guadalupe to making the allegations after father threatened to take mother to court over child custody issues.

Guadalupe underwent a forensic medical examination and interview in October 2019. The medical examination revealed no evidence of trauma, but noted that such findings were not inconsistent with the majority of sexually abused children. Guadalupe appeared to be "extremely anxious" while discussing her allegations of sexual abuse with a forensic evaluator.

In November 2019, DCFS filed a petition under Welfare and Institutions Code section 300, subdivisions (b), (d), and (j),[1] and alleged that both Guadalupe and Gabriel were at risk of serious physical and emotional harm and sexual abuse due to father's abuse of Guadalupe. The petition alleged that during various times, father had gotten on top of Guadalupe and attempted to kiss her, and had previously rubbed and/or inserted his penis in the child's vagina. The court detained both children from father, issued a restraining order protecting Guadalupe

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

from father, and ordered DCFS to refer father to individual and family counseling, parenting, and a sexual abuse program for perpetrators.

In jurisdiction/disposition and interim review reports, DCFS informed the court that Gabriel was participating in mental health services. Gabriel was progressing in therapy but continued to exhibit symptoms of anxiety. In February 2020, Gabriel informed a DCFS investigator that he believed Guadalupe's allegations of sexual abuse, and felt "disgusted for what he (father) did" to her. Also in February 2020, Guadalupe's therapist reported that the child had informed her that father would kiss the child's neck after winning the game "rock, papers, scissors" when Guadalupe was nine years old.

As of May 2021, DCFS reported that Gabriel continued to refuse visitation with father, appeared to "hold in his emotions in order to better to support his sister," and had difficulty concentrating in school. Mother completed family preservation, parenting, and a sexual abuse awareness program, and progressed in her own counseling. Father did not enroll in any services and denied any wrongdoing. DCFS recommended that the juvenile court sustain the petition, terminate jurisdiction with mother having sole physical custody of the children, and father having monitored visits with Gabriel.

On June 3, 2021, the court held a joint jurisdiction and disposition hearing. The court admitted DCFS's reports into evidence before hearing testimony from Guadalupe. Guadalupe testified that during the August 2019 incident, father had rolled on top of her, kissed her neck and lips, and placed his legs between hers. Frightened, Guadalupe quickly left the room. On two separate occasions when she was between

4

three and six years old, father placed Guadalupe under a blanket while they were inside his room or on a couch. He then kissed her and "mov[ed] a certain way . . . and [she] kind of felt a little bit of pain." Guadalupe could not recall if she saw father's private parts because the rooms were too dark.

To conform to proof, the court amended the section 300 petition to allege that father had sexually abused Guadalupe on three occasions by getting on top of her and kissing her lips and neck.[2] As amended, the court sustained the petition as to Guadalupe under subdivisions (b), (c), and (d), and as to Gabriel under subdivisions (b) and (d). The court dismissed the abuse of sibling count (§ 300, subd. (j)) as to Gabriel, noting that Gabriel was protected under the counts alleged under subdivisions (b) and (d). The court declared the children dependents of the court under section 300, removed them from father's custody, and released them to mother. The court then ordered that jurisdiction would terminate upon issuance of a final family law order. Later, after receiving a final custody order granting mother sole physical and joint legal custody of Gabriel, and father supervised visitation with Gabriel, the court terminated jurisdiction over the children.

---

[2] As to both children, the court struck allegations that father had rubbed and/or inserted his penis in Guadalupe's vagina.

DISCUSSION

1.    *Jurisdiction*

Father contends there is insufficient evidence to support the jurisdictional finding that his sexual abuse of Guadalupe demonstrated a substantial risk that Gabriel would suffer sexual abuse or serious physical harm or illness within the meaning of section 300, subdivisions (b) or (d).  We disagree.

We review the juvenile court's jurisdictional findings for substantial evidence.  (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 184.)  We must uphold the court's findings "'unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. [Citation.]'"  (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)  "'"We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'"  (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

We conclude that substantial evidence supports the jurisdictional finding that Gabriel was at substantial risk of future sexual abuse as that term is used in section 300, subdivision (d).[3]  Under section 300, subdivision (d), the juvenile court may exercise jurisdiction over a child who "has been sexually abused, or there is a substantial risk that [he or she] will be sexually abused, as defined in Section 11165.1 of the Penal

---

[3]    In light of our conclusion, we do not consider the alternative basis for the court's exercise of jurisdiction over the child under section 300, subdivision (b).  (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

6

Code, by the child's parent or guardian or a member of the child's household."  As provided in Penal Code section 11165.1, the term "sexual abuse" encompasses child molestation, which in turn is defined as any act by a defendant that "annoys or molests any child under 18 years of age."  (Pen. Code, § 647.6, subd. (a)(1).)  Child molestation "'does not require a touching [citation] but does require (1) conduct a "'normal person would unhesitatingly be irritated by,'" [citations], and (2) conduct "'motivated by an unnatural or abnormal sexual interest'" in the victim [citations].'  (*People v. Lopez* (1998) 19 Cal.4th 282, 289.)"  (*In re Karen R.* (2001) 95 Cal.App.4th 84, 89–90.)  "'The forbidden annoyance or molestation is not concerned with the child's state of mind, but rather refers to the defendant's objectionable acts that constitute the offense.'"  (*Id.* at p. 90.)

Here, father does not dispute the sustained findings regarding his sexual abuse of Guadalupe.  Those findings are supported by the evidence, which demonstrated that on at least three occasions father inappropriately mounted, groped, and kissed Guadalupe.  The first incident occurred when Guadalupe was around three years old; the more recent incident occurred when she was nine years old.  During at least one incident, Gabriel, another child (a stepsister), and three adults were present inside the family home.  At no point did father take responsibility for his actions; instead, he suggested that mother had prompted Guadalupe to contrive the allegations.

That Gabriel was in the family home on one occasion as father was sexually abusing Guadalupe reasonably suggested that Gabriel himself "was at risk of being a victim of sexual abuse as defined in

7

section 300, subdivision (d)." (*In re Ricky T.* (2013) 214 Cal.App.4th 515, 523; accord, *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1332 (*Ana C.*) [father's sexual abuse of 11-year old on living room couch where abuse was "capable of being observed" by other children placed all children in the home at risk of similar abuse]; *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1414 [upholding jurisdictional findings based on father's sexual abuse of the son's half-sister while the son was "in the same room [but] facing in the other direction"]; see also *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 968 ["[c]ases overwhelmingly hold that sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age"].)

Father raises several arguments in this appeal, none of which has merit. Father's primary assertion is that the court erred by failing to make an express finding that Gabriel was abused or at risk of abuse under subdivision (d) of section 300, and instead "just lumped him in with the allegations involving Guadalupe." Father never raised this argument in the proceedings below, and never objected to the amended petition as to Gabriel on any ground. Thus, the issue is forfeited on appeal. (See *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686; *In re Christopher C.* (2010) 182 Cal.App.4th 73, 82; *In re David H.* (2008) 165 Cal.App.4th 1626, 1640.) In any event, the argument is meritless, as the juvenile court sustained the amended counts under section 300, subdivisions (b) and (d) as to both children, and expressly

declared "the children" (i.e., both Guadalupe and Gabriel) dependents of the court. No further finding was required. (See § 356 ["the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Section 300 and the specific subdivisions of Section 300 under which the petition is sustained"].)

Father also asserts that his conduct was not egregious enough to warrant concern he would sexually abuse Gabriel in the future. In this regard, he distinguishes his own conduct from several other cases. (See *I.J.*, *supra*, 56 Cal.4th at p. 771 [father raped child and fondled the child's vagina]; *Ana C.*, *supra*, 204 Cal.App.4th at pp. 1320–1323 [mother's adult partner raped, orally copulated, and molested child].) While the *sustained* findings as to father's conduct here may not be as extreme as the conduct appearing in *I.J.* and *Ana C.*, this does not mean the risk to Gabriel "is nonexistent or so insubstantial that the juvenile court may not take steps to protect the son[ ] from that risk." (*I.J.*, *supra*, at p. 780.) The repeated sexual abuse of Guadalupe constitutes aberrant sexual behavior and a violation of father's parental role over his children. "'When a parent abuses his or her child, . . . the parent also abandons and contravenes the parental role. Such misparenting is among the specific compelling circumstances which may justify state intervention, including an interruption of parental custody.'" (*Id.* at p. 778, quoting *In re Kieshia E.* (1993) 6 Cal.4th 68, 76–77.) The serious and prolonged nature of father's sexual abuse of Guadalupe necessitated ongoing mental health treatment to treat Gabriel's symptoms of anxiety. Courts must "'not discount the real possibility

9

that brothers of molested sisters can be molested [citation] or in other ways harmed by the fact of the molestation within the family.  Brothers can be harmed by the knowledge that a parent has so abused the trust of their sister.  They can even be harmed by the denial of the perpetrator, the spouse's acquiescence in the denial, or their parents' efforts to embrace them in a web of denial.'" (*Id.* at p. 776, quoting *In re Rubisela E.* (2000) 85 Cal.App.4th 177, 198, disapproved on another ground in *I.J.*, *supra*, 56 Cal.4th 766.)

Finally, father asserts that because Guadalupe is currently protected from father and Gabriel wants nothing to do with him, there is no risk of sexual abuse to Gabriel in the future.  The absence of future opportunity to sexually abuse Guadalupe is not evidence of father's remorse or reformation.  (See *Los Angeles County Dept. of Children & Family Services v. Superior Court, supra,* 215 Cal.App.4th at p. 970 [observing in response to father's argument that abuse of stepdaughter occurred years earlier that "it was mother's installation of locks on the doors and taking father's key that likely stopped the abuse, not any change in father's desire for sex with preteen girls"].)  In sum, we conclude that substantial evidence supports the court's finding that Gabriel is a dependent of the court under subdivision (d) of section 300.

2.    *Disposition*

Father contends that because insufficient evidence supported the juvenile court's finding that his sexual abuse of Guadalupe posed a risk of harm to Gabriel, the disposition order over Gabriel must be vacated

as moot.  Because we uphold the court's exercise of jurisdiction over Gabriel, father's challenge to the disposition is without merit.

## DISPOSITION

The court's jurisdiction and disposition orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.