Filed 11/8/23  In re S.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.M. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>        Defendant and Appellant. | E080286<br><br>(Super. Ct. No. DPRI2200127)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Affirmed.

Shobita Misra, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham, and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

## I.

## INTRODUCTION

A.M. (Father) appeals the juvenile court's findings and orders asserting jurisdiction over his teenage daughter, Su., and removing her from his care. We affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The Riverside County Department of Public Social Services (the Department) received a referral alleging sexual abuse of Su.'s sister, Sa. Father and the girls' mother (who is not a party to this appeal) brought Sa., then 16 years old, to the police station because she wanted to report past sexual abuse against Father. Sa. reported that, when she was five years old, she was lying in Father's bed in between him and her sister, Su., and Father put his hand down her pants for about five minutes. Father denied the allegations and was not arrested.

A social worker from the Department interviewed the family the next day. Sa. said "'a long time ago,'" when she was between five and seven years old, Father molested her on two separate occasions. Sa. explained that her mother saw text messages between Sa. and a friend, in which Sa. said her Father had molested her. Sa. said she was not afraid of her Father, but worried that he would sexually abuse her again.

Mother confirmed she had read Sa.'s text messages with her friend about Father's abuse. When Mother asked Sa. about the texts, Sa. said that Father had touched her. Mother confronted Father about the texts, and they agreed to take Sa. to the police station

2

to report the accusations because they were concerned Sa.'s friend was going to call the police.

Father reported that Mother confronted him about Sa.'s allegations, but he denied them. The social worker thought Father minimized the severity of the allegations by giving stories of other issues within the family, including that the paternal aunt's son sent sexual pictures to Sa. and that Father was very concerned about Sa.'s relationship with the friend to whom she disclosed the allegations. Father stated that Sa. was "out of control" and "needed to seek therapy."

Su. denied any sexual abuse and said she felt safe at home, but acknowledged that Sa. never told her about Father's alleged abuse. However, Su. believed Sa. because Sa. would not lie about the abuse.

The Department discussed with the parents the safety concerns for Sa. with Father still living in the home and agreed to a safety plan. Father agreed to leave the family residence during the investigation and to not be around the children. The parents also agreed to Sa. completing a forensic interview.

The next day, the social worker spoke with the children's adult sibling, E.D. E.D. learned of Sa.'s allegations the day before and stated he was concerned because his adult sibling, T.D., had accused Father of sexually abusing her when she was a minor. When T.D. was in her 20s, she confronted Mother and Father about Father's alleged abuse, but they ignored her allegations because she was addicted to methamphetamine at the time.

3

E.D. explained, however, that T.D. was now sober and maintained that Father sexually abused her when she was a minor.

The social worker later spoke with T.D., who stated that, when she was between five and seven years old, her Father touched her twice underneath her clothing and asked her if she liked it. The abuse lasted a few minutes each time, no one else was around, and she never told anyone when it happened until confronting her Mother years later.

Sa.'s forensic interview was canceled because Father drove her to the interview in violation of the agreed-on safety plan. Mother told the social worker that Father drove Sa. because Mother was sick. Sa. also reported that Father came by the house to pick up things. When the social worker told Father he could not take Sa. to the interview because he could not be alone with her, Father said he understood.

Sa. reported that Father molested her when she was between six and seven years old and that there were two separate incidents. During one incident, Father touched her with his hand under her underpants while she was lying on the floor in between Father and Su., who was asleep. During the second incident, Father got into Sa. bed and "touched her vagina and butthole under her clothing and over her clothing." Sa. said Father made her feel ashamed for disclosing the incidents, telling her that he never abused her and that it would be her fault if he went to jail. She also reported that she does not want Father living in the home, but he sleeps there and sometimes takes her to school.

Because of the Department's concerns about Sa.'s allegations and Father remaining in the home, the Department obtained protective custody warrants and placed the children in foster care. The juvenile court detained the children from Father (but not Mother) and issued a temporary restraining order against Father to protect the children.

The Department then filed a petition on behalf of the children under Welfare and Institutions Code[1] section 300. The petition alleged Sa. came within the juvenile court's jurisdiction under section 300, subdivisions (b)(1) (failure to protect) and (d) (sexual abuse) while Su. came within the court's jurisdiction under section 300, subdivisions (b)(1) and (j) (abuse of sibling).

Shortly after filing the petition, the Department interviewed the children again. Sa. confirmed that the petition's b-1 and d-1 allegations that Father sexually abused her twice were true. She denied allegation b-3 concerning Father's purported substance abuse, stating that she never saw him use drugs but did see him "'drink a lot of beer . . . when he comes [home] from work.'" As to allegation j-1 concerning Su., Sa. said she does not think Su. is at risk in the home because she would never get in the bed with her Father and he would not do that to her.

Su. stated she did not know about the petition's allegations b-1 and d-1 concerning Father's alleged abuse of Sa. As to allegation j-1, she said that she does not feel at risk of being abused because she loves her Father and wants him back home.

---

[1] All further statutory references are to Welfare and Institution Code.

5

The juvenile court set the matter for a contested jurisdiction hearing at Father's request. At the hearing, the Department asked the juvenile court to strike allegations b-2, b-3, and d-2[2] while sustaining the remaining allegations concerning Father's sexual abuse of Sa. (allegations b-1, d-1, & j-1). Father's counsel objected to the Department's request to sustain those allegations.[3] After noting that he had filed a JV-190 on Father's behalf outlining what rights Father agreed to waive, counsel urged the court to dismiss allegations b-1, d-1, and j-1.

The juvenile court found allegations b-1, d-1, and j-1 true and struck allegations b-2, b-3, and d-2. The court found Sa. came within the court's jurisdiction under section 300, subdivisions (b)(1) and (d), while Su. came within section 300, subdivisions (b)(1) and (j). The court adjudged the children dependents of the court, removed them from Father's physical custody, and ordered family maintenance services for the parents. Father timely appealed.

---

[2] These allegations concerned Mother's alleged failure to protect Sa. from Father's abuse and his purported substance abuse.

[3] Father's JV-190 was not in the clerk's transcript on appeal. On our own motion, we ordered the JV-190 deemed part of the record on appeal.

III.

DISCUSSION

Father does not challenge the juvenile court's findings and orders as to Sa. He instead argues that the juvenile court erred in asserting jurisdiction over Su. and removing her from his care. We disagree.

We first reject the Department's argument that Father forfeited his jurisdictional challenge because he agreed to a negotiated settlement of the petition's allegations via his JV-190. "[W]hen a parent submits the jurisdictional issue to be determined by the juvenile court solely on the basis of the social worker's report, the parent does not waive his or her right to challenge the sufficiency of the evidence to support the court's jurisdictional finding." (*In re N.M.* (2011) 197 Cal.App.4th 159, 166-167.)

That is what Father did here. Father's JV-190 states that he "wish[ed] to . . . submit the petition on the basis of the social worker's . . . report and other documents, if any." Father's attorney declaration states that he "explained and discussed with [Father] the rights and consequences of . . . submitting the petition on the report." At the *contested* jurisdictional hearing, Father's attorney urged the juvenile court to strike or find not true the b-1, d-1, and j-1 allegations against Father. In short, Father submitted the jurisdictional issue to be determined by the juvenile court based upon the social worker's reports and thus did not waive his right to challenge the juvenile court's jurisdictional findings on appeal.

7

The Department alternatively argues we should dismiss Father's appeal because he does not challenge the juvenile court's true finding on the d-1 allegation that he sexually abused Sa. We acknowledge that we may affirm the juvenile court's assertion of jurisdiction if the appealing party does not challenge one of several grounds for jurisdiction. (See *In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).) But we "generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding . . . serves as the basis for dispositional orders that are also challenged on appeal." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763, disapproved on other grounds by *In re D.P.* (2023) 14 Cal.5th 266, 283.) We exercise our discretion here to review the juvenile court's b-1 and j-1 allegations because Father contends they provided the basis for the dispositional order removing Su. from Father's care, which Father challenges on appeal.

We note, however, that both allegations are based only on Father's abuse of Sa. and the risk it posed to Su. The b-1 allegation states, "The child, [Sa.], was sexually abused by her father, in that he touched the child inappropriately underneath her underwear on two separate occasions." The j-1 allegation states, "[Su.'s] sibling, [Sa.] has been abused and/or neglected as defined in subdivision 300(b) and (d) of the Welfare and Institutions Code, and there is a substantial risk that this child will suffer similar harm." Father argues the juvenile court erred in sustaining these allegations because there was insufficient evidence at the time of the jurisdiction hearing that there was a current, substantial risk that Father would sexually abuse Su. or put her at any other risk.

8

Thus, our review of the allegations requires us to determine whether the juvenile court properly found that Father's sexual abuse of Sa. placed Su. at a substantial risk of harm at the time of the jurisdiction hearing.

Section 300, subdivision (b) provides that a juvenile court has jurisdiction over a minor child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he failure or inability of the child's parent . . . to adequately supervise or protect the child." Section 300, subdivision (d) provides that the court has jurisdiction over a child if "[t]he child has been sexually abused, or there is substantial risk that the child will be sexually abused." Section 300, subdivision (j), in turn, confers jurisdiction on the juvenile court over a child if "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) If substantial evidence supports them, we must affirm. (*Ibid*.) "'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'" (*Ibid*.) "To be sufficient to sustain a juvenile dependency petition the evidence must be '"reasonable, credible, and of solid value"'" such that the court reasonably could find the child to be a dependent of the

court . . . . [Citation.]" (*In re R.M.* (2009) 175 Cal.App.4th 986, 988.) Father bears "the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

The juvenile court here found jurisdiction over Su. under section 300, subdivisions (b) and (j) based on Father's sexual abuse of Sa. (§ 300, subd. (d).) Father argues jurisdiction was improper under both provisions because there was insufficient evidence that his two instances of sexually abusing Sa. over a decade before the jurisdiction hearing placed Su. at a current, substantial risk of sexual abuse. We disagree.

"Cases overwhelmingly hold that sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age or to a half sibling." (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 968, fn. omitted.) In fact, "appellate courts have rarely if ever been faced with a situation in which a father sexually molests one female minor in the household and the juvenile court does not find another female minor in the household to be at risk." (*Id.* at p. 507.) Our Supreme Court has noted that a finding of sexual abuse involving one sibling "'makes it virtually incumbent upon the juvenile court to take jurisdiction over the siblings.'" (*I.J.*, *supra*, 56 Cal.4th at p. 779.) For that reason, case after case "categorically state[s] that aberrant sexual behavior directed at one child in the household places other children in the household at risk, and this is especially so when both children are females." (*Los Angeles County Dept. of Children & Family Services v. Superior Court*, *supra*, at p. 968, fn.

10

omitted.)  This is because a parent sexually abusing a child in the home constitutes a "'fundamental betrayal of the appropriate relationship between the generations.'"  (*I.J.*, *supra*, at p. 778.)

This is true when, as here, the abuse occurred in the presence of the non-abused sibling.  (See *In re Ricky T.* (2013) 214 Cal.App.4th 515, 523; *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1332 [father's sexual abuse of 11-year old on living room couch where abuse was "capable of being observed" by other children placed all children in the home at risk of similar abuse]; *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1414 [upholding jurisdictional findings based on father's sexual abuse of the son's half-sister while the son was "in the same room [but] facing in the other direction"].)  It remains true even if the abuse occurred long in the past.  (E.g., *In re Dorothy I.* (1984) 162 Cal.App.3d 1154 [affirming jurisdiction based on father's sexual abuse of sibling 15 years prior].)

This case is no different.  Sa. reports that Father sexually abused her twice when she was five to seven years old, coupled with her fear that Father might abuse her again and T.D.'s reports that Father also sexually abused her as well, supported the juvenile court's unchallenged section 300 subdivision (d) finding, which in turn supported the court's sustaining the petition's subdivisions (b) and (j) allegations.  (See *Los Angeles County Dept. of Children & Family Services v. Superior Court*, *supra*, 215 Cal.App.4th at pp. 964, 968; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1345-1346; *I.J.*, *supra*, 56 Cal.4th at pp. 774-780.)  The juvenile court thus properly took jurisdiction of Su. under both subdivisions (b) and (j).  The juvenile court did not have to wait until Su. was

"'seriously abused or injured to assume jurisdiction and take the steps necessary to protect [her].'" (*I.J.*, *supra*, at p. 773.)

The court also properly removed Su. from Father's care. To order a child removed from a parent's physical custody, the juvenile court must find by clear and convincing evidence that (1) there "would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child in the parent's home, and (2) "there are no reasonable means by which the [child's] physical health can be protected without" removal. (§ 361, subd. (c)(1); *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.) "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*In re N.M.*, *supra*, 197 Cal.App.4th at pp. 169-170.)

We review the juvenile court's findings underlying a removal order for substantial evidence. (*In re R.T.*, *supra*, 3 Cal.5th at p. 633.) "'[W]e draw all reasonable inferences from the evidence to support the [court's] findings and orders . . .; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'" (*Ibid.*)

Substantial evidence supports the juvenile court's order removing Su. from Father's care. Sa. did not want Father in the home because she feared he would abuse her again. The Department removed the children from Father's care not just because of Sa.'s allegations, but also because of Father's repeated violation of the safety plan even though

12

he agreed to it and stated that he understood it. Although Father agreed not to stay in the family home or be alone with Sa. as part of the safety plan, he continued staying at the home and had unsupervised contact with Sa. Father repeatedly denied Sa.'s allegations, shamed her for reporting the abuse, and has taken no steps to address and remedy his behavior. (See *In re Ashly F.* (2014) 225 Cal.App.4th 803, 806-808 [reversing removal order because abusive parent acknowledged abuse and expressed remorse, and non-abusive parent was committed to protecting children from future abuse]; see also *In re A.E.* (2014) 228 Cal.App.4th 820, 826 [reversing removal order because it was based on "an isolated incident that [was] unlikely to recur" given abusive parent's remorse and commitment not to use corporal punishment].) Father's failure to do so is probative of the fact that there were no other reasonable alternatives to removal because it strongly indicates Father has failed to confront and deal with the issues giving rise to the court's jurisdiction. (See § 366.21, subd. (e)(1) ["The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental"].)

In short, substantial evidence supports the juvenile court's determination there were no reasonable means by which Su. could be protected from Father's sexual abuse without removal. We therefore affirm the court's jurisdictional and dispositional orders.

## IV.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.